Bertha CARROLL, Plaintiff-Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of
Health, Education and Welfare,
Defendant-Appellee.

No. 78–3022.

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 6, 1980.

Decided April 22, 1980.

Frank J. Neff, Barkan, Barkan & Neff, Columbus, Ohio, William M. Culbert, Culbert & Adkins, Toledo, Ohio, for plaintiff-appellant.

William D. Beyer, U. S. Atty., Patrick J. Foley, Asst. U. S. Atty., Toledo, Ohio, Gabriel L. Imperato, Chicago, Ill., for defendant-appellee.

Before KEITH and JONES, Circuit Judges and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge.

Appellant Bertha Carroll appeals from the judgment of the District Court, Northern District of Ohio, the Honorable Nicholas J. Walinski, affirming the Secretary's denial of black lung benefits to claimant on account of her deceased miner husband's alleged black lung disability. After reviewing the evidence submitted by claimants [1] in support of their application for benefits, the Secretary of Health, Education and Welfare concluded that Mr. Millard Carroll was not disabled due to pneumoconiosis and was therefore not entitled to benefits.

In addition to claiming that the Secretary's decision is not based on substantial evidence, appellant Carroll. alleges that the district court erred in denying her motion to remand and in denying her an opportunity to argue the merits of her claim by dismissing her complaint on the Secretary's motion for summary judgment. The basis of appellant's motion in the district court to remand to the Secretary was the submission of additional authority in support of her claim. The additional authority was in the form of a letter from the physician who had conducted the pulmonary function studies on Mr. Carroll in December, 1974 stating that he considered the tests to be "valid tests run in a correct and competent manner." The significance of this statement by the treating physician is that it completes the requirements contained in 20 C.F.R. § 410.430, entitling claimant to a presumption of disabling pneumoconiosis upon a minimum showing of forced expiratory volume in one second ($FEV_1$) and maximum voluntary ventilation (MVV).[2] Prior to the

---

1. Millard Carroll was the original claimant in this case when application for benefits was first made in January, 1972. Upon Mr. Carroll's death in May, 1975, his widow, Bertha Carroll, pursued his claim as substitute claimant.

2. 20 C.F.R. § 410.430 describes the prescribed method for conducting pulmonary function studies on claimants for black lung benefits. While the December, 1974 study on Carroll was itself properly performed, and in fact yielded results which appeared to the Appeals Counsel to be sufficient to trigger operation of the rebuttable presumption contained in § 410.-

submission of this statement, it appears from the record that the results of the December, 1974 pulmonary function study were not considered in the determination of Mr. Carroll's disability.[3]

## I

On January 27, 1972, the original claimant, Millard Carroll, filed an application for black lung disability benefits under Title IV of the Federal Coal Mine Health & Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* In his application for black lung benefits, Mr. Carroll stated that he was born on September 5, 1905, completed the eighth grade in school, and had worked in coal mines for 44 years. He described his disability as "Tightness in lungs—difficulty breathing—shortwinded." His application further reflects that at that time, he was married, with a minor dependent child and had never made application for workmen's compensation benefits based on pneumoconiosis or other occupational disease.

At the hearing, Mr. Carroll testified that he began working in coal mines full time in July, 1926, and that his work continued until he retired on September 1, 1970. He described his last coal mining job as foreman, and indicated that he became unable to work because of difficulty in breathing, shortness of breath, and lack of endurance. Mr. Carroll further testified that his breathing had become progressively worse and that he had not done any work since leaving coal mining.

The Social Security Administration Bureau of Disability Insurance denied this application on April 2, 1973, and again upon reconsideration on December 14, 1973. The reason given for the denial was that the evidence submitted by Mr. Carroll failed to show that he had pneumoconiosis or a severely disabling chronic lung impairment that could be presumed to be due to pneumoconiosis.

Mr. Carroll then filed a request for a hearing on June 7, 1974, and on January 17, 1975 a *de novo* hearing was held before an Administrative Law Judge (ALJ) in Pikeville, Kentucky. Mr. Carroll appeared with counsel and gave testimony in support of his claim to supplement the medical evidence submitted. The medical evidence considered by the ALJ in his determination of claimant's disability, as indicated in his opinion, was the following:

1) Pulmonary function studies, conducted on September 19, 1972 and again on December 27, 1974. The conducting physician's impression of the 1972 study was "Restrictive pulmonary disease, moderate $FEV_1$ —2.15 liters, slightly below table, MVV —102 liters, excess of table." The 1974 study indicated "both a restrictive and obstructive defect. The latter is more severe and is unaffected by bronchodilators." $FEV_1$ val-

---

490(b), the requisite statement as to "the individual's ability to understand directions, and cooperate in performing the tests" was not submitted along with the test results.

**3.** Although the opinion of the district court states that the October 21, 1976 decision of the HEW Appeals Council was rendered after a "careful review of all the evidence of record, including the additional evidence", the Appeals Council itself stated in its decision:

"Studies performed on December 27, 1974 revealed a FEV1 (Forced Expiratory Volume in one second) value of 2.086 liters and a MVV (Maximum Voluntary Ventilation) value of 50.8 liters. The Appeals Council notes that while these values appear to have met the regulatory criteria for entitlement, these studies did not contain the necessary infor-

mation specified in Section 410.430 of the Regulations which requires a statement from the physician concerning the miner's ability to understand the directions and the extent of his cooperation in performing the test. The Council also noted that these studies were performed nearly 18 months after the date the Social Security Administration last had jurisdiction of the black lung benefits program. As studies performed in September, 1972 exceed all regulatory criteria and the studies of December 27, 1974, are not acceptable for establishing a presumption of pneumoconiosis, the Appeals Council finds that the pulmonary function studies do not establish the existence of a disabling pulmonary or respiratory impairment on or before June 30, 1973."

ue —2.15 liters, MVV value —50.8 liters;[4]

2) A statement by a physician who examined Millard Carroll on January 3, 1973 that Carroll "does not appear severely impaired;"

3) A chest x-ray, taken on February 19, 1972, read as negative for pneumoconiosis by three physicians, two of whom were certified "B" readers;

and 4) A chest x-ray, taken on June 25, 1973, and read by four physicians. Two physicians found simple pneumoconiosis and two certified "B" readers read the film negative for pneumoconiosis.

In his testimony, Millard Carroll stated that he worked until the last working day in August of 1970, just prior to reaching his sixty-fifth birthday on September 5, 1970. He also testified that he could not work any longer because he was short-winded, that he had difficulty sleeping, and that he had not done any work since leaving the coal mine. The ALJ credited an examining physician's statement that Carroll ". . . has retired after 49 years in the mines and has no intention of performing any coal mine work."

After considering the foregoing evidence the ALJ concluded that Mr. Carroll's retirement was not the result of his being rendered wholly unable to do his coal mine work. Although the ALJ found evidence to indicate that Carroll may have experienced some breathing difficulties which "may have caused him some discomfort, reduced his efficiency, or interfer[ed] to some extent with the performance of his mining work," he concluded that such impairment was not sufficiently severe to prevent the continuance of his work. The ALJ correctly stated the applicable law:

"It is not only required that a miner should have been employed in coal mine work for a specified minimum number of years or for a long period of time, but also that the existence of a severe chronic respiratory or pulmonary disease must be established by competent and credible evidence.

\* \* \* \* \* \*

It is clear from the Act and Regulations that benefits are to be awarded to only those miners whose chronic respiratory or pulmonary diseases are of such severity as to render them wholly unable to do their mine work or other comparable and gainful work. The mere existence of some impairment due to chronic respiratory or pulmonary disease is not sufficient.

\* \* \* \* \* \*

Although the evidence establishes the miner's coal mining employment for at least 35 years, the existence of a chronic pulmonary or respiratory disease of the severity envisioned by the Act and the Regulations is not established. Therefore, this requisite factor not being established, the presumptions cannot be applied in this case."

On April 19, 1975, the claimant filed a request for review by the Appeals Council of the March 14, 1975 decision of the Administrative Law Judge. On May 9, 1975, subsequent to filing this request, claimant Millard Carroll died, and his wife, Bertha Carroll, pursued the claim on the deceased miner's behalf. The Appeals Council noted that while the evidence of record included results of the December 27, 1974 pulmonary function studies, the ALJ had not discussed these studies in his decision. The Appeals Council granted Carroll's request for review in order to consider the results of the 1972 and 1974 pulmonary function studies, as well as the additional evidence occasioned by Millard Carroll's death.

---

4. While not discussing the values produced by the 1974 pulmonary function studies, the ALJ properly noted that the values reported by Carroll from the 1972 studies do not entitle him to the Section 410.490 presumption of disabling pneumoconiosis. Under Section 410.490, which provides the criteria for the adjudication of claims filed prior to July 1, 1973, both the FEV1 value and the MVV value must be equal to or less than the values provided in the tables. Carroll's 1972 MVV value exceeded the value provided in the table.

For an individual of Millard Carroll's height, 70 inches, who has at least 10 years of coal mine employment, the table contained in Section 410.490 of the Regulations requires values equal to or less than a $FEV_1$ (Forced Expiratory Volume in one second) of 2.5 liters and a MVV (Maximum Voluntary Ventilation) of 100 liters in order to establish the presumption of total disability on the basis of pulmonary function studies. The December 27, 1974 studies revealed an $FEV_2$ value of 2.086 liters and a MVV value of 50.8 liters for Mr. Carroll. While the Appeals Council noted that these values appeared to have met the regulatory criteria for entitlement, it found them unacceptable for establishing a presumption of pneumoconiosis for two reasons. First, the studies did not contain the necessary information specified in Section 410.430 of the Regulations, which requires a statement from the conducting physician concerning the miner's ability to understand the directions and the extent of his cooperation in performing the test. Secondly, the 1974 studies were performed nearly eighteen months after the date that the Social Security Administration last had jurisdiction of the black lung benefits program.

Additional evidence considered by the Appeals Council consisted of Mr. Carroll's death certificate and the autopsy report. The death certificate revealed that Mr. Carroll's death was due to generalized peritonitis and gangrene of the sigmoid colon. A secondary condition of pulmonary congestion was noted as well. The autopsy report revealed no pneumonic consolidations in the lungs, while areas of emphysema and atelectasis were noted. Significantly, the autopsy report did indicate bilateral pneumoconiosis.

Because of this positive indication, the Appeals Council submitted the autopsy slides for further examination by a Board-Certified pathologist. After examining the slides, the pathologist reported that the sample of pulmonary tissue revealed "minimal deposits of anthracotic pigment in the perivascular and subpleural lymphatic system." He further noted that the amount of pigment present was "no more than would be expected in a city dweller", and concluded that the samples of tissue did not represent either complicated or uncomplicated pneumoconiosis.

The Appeals Council concluded that the examination of the lungs on autopsy failed to establish the presence of pneumoconiosis, and, accordingly, that Millard Carroll's death was not caused by pneumoconiosis, nor did he have, at any time prior to June 30, 1973 [5] pneumoconiosis or a totally disabling chronic respiratory or pulmonary impairment. On October 21, 1976, the Appeals Council affirmed the decision of the ALJ, and this decision became the final decision of the Secretary of Health, Education and Welfare.

On December 20, 1976, claimant filed a petition for judicial review of the Secretary's decision in the United States District Court for the Northern District of Ohio. Claimant then secured a letter from the physician who had conducted the 1974 pulmonary function studies validating the procedure and results of the studies, thus fulfilling the requirements of 20 C.F.R. § 410.430. Carroll made this letter the basis of her motion to remand, filed August 23, 1977, in which she argued that the letter makes the December 27, 1974 pulmonary function study valid, and as a result, the Secretary's decision may have been different had such statement been available to the Appeals Council. Upon the Secretary's motion for summary judgment, the district court issued an Opinion Order and Judgment affirming the October 21, 1976 decision of the Secretary, and dismissing Car-

5. The significance of the date June 30, 1973 is that the interim presumptions set out in 20 C.F.R. § 410.490 become operative upon a showing that the minimum requirements needed for application of the presumption had been present on or before June 30, 1973. § 410.490 are the Interim Adjudicatory Rules for certain Part B claims filed by a miner before July 1, 1973, or by a survivor where the miner died before January 1, 1974. After July 1, 1973, the authority to administer claims was transferred from the Secretary of Health, Education and Welfare to the Secretary of Labor.

roll's complaint.[6] It is from this judgment that claimant appeals.

## II

The questions presented by this appeal are twofold: (1) Did the district court commit reversible error in overruling claimant's motion to remand her cause to the Secretary in light of Dr. Lenhart's letter of July 24, 1977 which fulfilled the requirements of 20 C.F.R. § 410.430? and (2) Is the Secretary's decision supported by substantial evidence on the record, particularly in light of the liberal standard for measuring total disability promulgated in *Begley v. Mathews* 544 F.2d 1345 (6th Cir. 1976), *cert. denied* 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977)? We answer the first question in the negative and the second question in the affirmative.

The district court did not commit reversible error in overruling Carroll's motion to remand. Dr. Lenhart's letter of July 24, 1977 stating that the December, 1974 tests were valid and were run in a competent and correct manner did in fact fulfill the requirements of 20 C.F.R. § 410.430. Moreover, the Appeals Council noted, and the Secretary does not deny, that the results of the 1974 pulmonary function study would have qualified Carroll for a presumption of disability due to pneumoconiosis under the interim standards contained in 20 C.F.R. § 410.490. However, because the presumption would be conclusively rebutted by the pathologist's report of the deceased claim-

ant's pulmonary tissue, the Secretary's final decision would remain the same.

Judicial review of final determinations of the Secretary regarding applications for black lung disability benefits are governed by Title 30, United States Code, Section 923(b) which incorporates by reference Title 42, United States Code, Section 405(g). Section 405(g) permits remanding to the Secretary for taking additional evidence *upon a showing of good cause.*

The test for the existence of good cause sufficient to justify such a remand is whether more evidence is required to develop the facts necessary to enable the Secretary to make a determination on the issue in question. *Hupp v. Celebrezze,* 220 F.Supp. 463 (N.D.Ia.1962). Conversely, where the issue in question has already been fully considered, further evidence on that point is merely cumulative. *Schaffer v. Califano,* 433 F.Supp. 1218, at 1224 (D.Md.1971). Cumulative evidence does not constitute good cause for remand. *Morris v. Finch,* 319 F.Supp. 818 (S.D.W.Va.1969) *aff'd.,* 434 F.2d 1039 (4th Cir. 1970). See also *Zielinski v. Califano,* 580 F.2d 103 (3d Cir. 1978). Further, if a consideration of newly submitted evidence would not result in a reasonable chance that the Secretary would reach a different conclusion, good cause for a remand has not been shown. *Finnstrom v. Mathews,* 412 F.Supp. 415 (D.Ariz.1976), *Roberts v. Weinberger,* 383 F.Supp. 230 (E.D.Tenn.1974) *aff'd.,* 487 F.2d 1403 (6th Cir. 1973).[7]

---

**6.** Subsequent to the district court's order of October 6, 1977, Carroll filed a motion for the district court to reconsider its decision, as well as a notice of appeal with this court. Carroll's motion for reconsideration was overruled on December 14, 1977, since she had already filed a notice of appeal.

**7.** Carroll seeks to characterize Dr. Lenhart's letter as "new" evidence which is "material" to the outcome of the Secretary's decision, citing *Webb v. Finch,* 431 F.2d 1179 (6th Cir. 1972), in support of his petition for remand on that basis. We note that while the results of the December, 1974 tests may have been material to the ALJ's *initial* determination of disability, the evidence is not "new", within the meaning of the cases cited. The letter was available at

the time of Carroll's initial hearing but was not obtained by counsel and submitted with the test results as required by § 410.430. Moreover, the decision of the Appeals Council indicates that it in fact noted the results of the December, 1974 testing but did not consider those results as material to its decision. The Appeals Council so reasoned because of the conclusive nature of the pathologist's report, and the fact that the tests were conducted 18 months after the date that the jurisdiction of the black lung benefits program had passed from the Social Security Administration to the Department of Labor, as well as because the 1974 tests were incomplete without Dr. Lenhart's letter.

Were it not for the conclusive nature of the pathologist's report which would rebut the

■ Clearly, given the conclusive nature of the pathologist's report after examining Mr. Carroll's pulmonary tissue, it is unlikely that consideration of the December, 1974 test results—complete with Dr. Lenhart's letter—would result in a reasonable chance that the Secretary would reach a different conclusion. The pathologist's report indicated that the sample of pulmonary tissue revealed "minimal deposits of anthracotic pigment in the perivascular and subpleural lymphatic system." He noted that the amount of pigment present was no more than would be expected in a city dweller, and concluded that the samples of tissue did not represent either complicated or uncomplicated pneumoconiosis. On this basis, we hold that good cause has not been shown in support of Carroll's motion to remand, and that the district court therefore properly denied the motion.

### III

Appellant's next allegation of error is that the Secretary's decision is not based on substantial evidence, in light of the procedure set out in *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976), *cert. denied* 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977), for calculating the sufficiency of evidence to trigger the presumption under 20 C.F.R. § 410.490 that the claimant suffered from pneumoconiosis on or before June 30, 1973. In *Begley v. Mathews*, this court held that pulmonary function studies which met the requirements of 20 C.F.R. § 410.490 would be competent to establish the existence of pneumoconiosis prior to June 30, 1973, even though the studies were conducted subsequent to that date, so long as the claimant establishes that the test results relate back to the period preceding June 30, 1973. The

reason for this retroactive application is the difficulty in detecting pneumoconiosis, particularly in its early stages, as well as the reliability of the inference that a miner in fact suffered from pneumoconiosis on June 30, 1973 when tests conducted a relatively short time after that period reveal positive results.[8]

The calculation standard under *Begley* is whether, within the reasonable probabilities of medical science, the post-June 30, 1973 test showed "such progression beyond one or more of the minimal requirements for triggering the 20 C.F.R. § 410.490 presumption as to warrant a finding of fact that one or more of such requirements had been met as of June 30, 1973." *Begley*, at 1355. The Secretary has conceded, and most circuits are in agreement, that all evidence, including that obtained *subsequent* to June 30, 1973, should be considered with respect to whether or not the disability was present as of that date, (June 30, 1973) so long as the evidence relates back to the period preceding June 30, 1973. *Armstrong v. Califano*, 599 F.2d 1282 (3d Cir. 1979); *Paluso v. Mathews*, 573 F.2d 4 (10th Cir. 1978); *Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977); *Humphreville v. Mathews*, 560 F.2d 347 (8th Cir. 1977); *Ingram v. Califano*, 547 F.2d 904 (5th Cir. 1977).

■ Appellant proposes that this court follow a *prospective application* of the *Begley* calculation. That is, to presume that by June 30, 1973, ten months after Mr. Carroll's September, 1972 testing had failed to yield the minimum results required to trigger the presumption under the interim standards, his MVV values would have been reduced so as to entitle him to a presumption of total disability under those standards. As an indication of his deteriorating

§ 410.480 presumption of pneumoconiosis, claimant's motion to remand for consideration of the 1974 results might be well taken.

8. In *Begley*, at 1353, we quoted with approval deposition testimony cited in *Collins v. Weinberger*, 401 F.Supp. 377 (W.D.Va.1975) vacated on other grounds, *sub nom. Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977):

"By way of deposition, Dr. William F. Schmidt, a noted authority in the black lung field, testified that the detection of pneumoconiosis is a difficult procedure and that x-

rays and other tests are subject to differing interpretations. He stated that the disease grows very slowly, and furthermore, that it would be logical to assume that recent positive evidence of pneumoconiosis would mean that the miner has had the disease for at least two years. In short, he considers later positive evidence highly relevant to the question of whether the miner had the disease on a prior date. *Collins v. Weinberger, supra* at 381."

state, Carroll cites the December 1974 results, which would have in fact entitled him to a presumption under the interim standards, but for their failure to comply with the § 410.430 requirement of a letter accompanying the results stating that the miner cooperated in the testing.

However, there is an obvious distinction between retroactive and progressive application of positive ventilatory testing results. In the former, the existence of the disease under the regulatory criteria is clearly *documented* so that it is logical to reason backward in time up to two years, that the disease had its genesis at some time prior to the testing. Progressive application requires a judgment that even though the disease has not been documented, the Secretary should presume that the $FEV_1$ and MVV values revealed by a given pulmonary function study will gradually worsen, compelling the conclusion that the miner would have been disabled by pneumoconiosis at some time in the future. We find this reasoning to be an untenable exercise in speculative judgment. To qualify for lifetime federal benefits under 20 C.F.R. § 410.490, a claimant must still prove that he was totally disabled due to pneumoconiosis as of June 30, 1978. The Fourth Circuit addressed this problem in *Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977) and stated:

"Those who submitted claims prior to the onset of their disability in order to qualify for the more lenient standards may not measure against those standards the state of their health at some undetermined point in the future. Such a result would cut against congressional intent in directing promulgation of the interim adjudicatory standards, which was to facilitate processing of the then existing backlog of black lung claims, within the framework of a statutory scheme that envisioned a federal role of limited duration. Accord *Begley v. Mathews*, 544 F.2d 1345 at 1352, (6th Cir. 1976)." (footnotes omitted) *Talley*, at 917–18.

We agree with the Secretary that the September, 1972 test results are insufficient to thrust Carroll forward into the Section 410.490 presumption category under the interim standards. As for the December, 1974 results, we need not today decide whether those results may be retroactively applied to entitle claimant to the presumption of pneumoconiosis contained in the interim rules, notwithstanding the failure of the conducting physician to include the letter required by Section 410.430. For even if the presumption were triggered by the relation back of the 1974 results to the interim period, the presumption is always subject to the rebuttal provided for in the Regulations. *Begley*, at 1355. The pathologist's report that Carroll's pulmonary tissue indicated neither simple nor complicated pneumoconiosis conclusively rebuts any presumption which may have arisen. Thus, the decision of the Secretary that Millard Carroll was neither disabled due to pneumoconiosis nor died from pneumoconiosis appears to be based on substantial evidence.

While we are not unmindful of the remedial nature of the Act and the liberal construction which it should be accorded, see *Miniard v. Califano* (slip opinion No. 77–1688, decided and filed March 10, 1980) 618 F.2d 405 (6th Cir. 1980), we are of the opinion that the Secretary's denial of black lung benefits in this case should be affirmed.

AFFIRMED.