**Edwin SOUTHARD, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, et al., Respondents.**

**No. 82–3653.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 25, 1983.

Decided April 16, 1984.

Dixie R. Satterfield (argued), Safford & Satterfield, Bowling Green, Ky., for petitioner.

Denise Butler Hart (argued), J. Michael O'Neill, U.S. Dept. of Labor, Washington, D.C., for respondents.

Before JONES and KRUPANSKY, Circuit Judges, and SPIEGEL, District Judge.[*]

SPIEGEL, District Judge.

The petitioner, Edwin Southard (Southard), seeks review of a final decision of the Benefits Review Board (Board) denying his claim for benefits. We grant the petition and remand.

Southard applied for benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (Supp. V 1981), on June 15, 1979. His claim was denied by the Office of Workers' Compensation Programs and Southard requested a hearing.

---

[*] The Honorable S. Arthur Spiegel, District Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

A hearing was conducted before an Administrative Law Judge (ALJ) on January 29, 1981. Evidence at the hearing disclosed that Southard was 65 years old and his wife was his sole dependent. It was undisputed that Southard was employed as a coal miner for three years, from 1933 to 1935, inclusive. From 1935 to approximately 1951, Southard worked for two different coal retailers in Detroit, Michigan. His jobs with these employers consisted of unloading coal from railroad cars into trucks or storage piles, and delivering the coal to consumer homes. Southard's coal dust exposures, while unloading the coal and upon entering basement coal bins to deliver the coal, were extremely heavy.

From 1951 to 1974 Southard repaired machinery in Kentucky. Since 1974 he has done light work repairing electrical motors on a part-time basis. Southard was not exposed to coal dust from 1951 until the hearing date.

Southard is 67 years old. He is unable to perform any strenuous activity now, and he works irregularly. He has been diagnosed as suffering from chronic obstructive pulmonary disease and emphysema.

The administrative law judge (ALJ) found "[w]ith respect to the question of whether the claimant is afflicted with pneumoconiosis, the record contains substantial evidence that the claimant has a severe respiratory impairment and a .finding by a board certified radiologist that he is afflicted with the disease." The ALJ concluded, however, that Southard's employment with the two coal companies in Detroit did not constitute employment as a coal miner. Accordingly, the ALJ determined that the only relevant work was Southard's three year coal mining stint in the 1930's. Based on this premise, the ALJ held there was insufficient evidence to demonstrate that Southard's impairment was related to his coal mine employment, and denied the claim. The Board affirmed the ALJ decision and this petition ensued.

This Court is presented with two questions on review. First, Southard claims that he is entitled to the presumption of causation found at 30 U.S.C. § 921(c)(1), and the companion regulation, 20 C.F.R. § 718.203(b). Second, if Southard is not entitled to the presumption, we are confronted with whether substantial evidence supports the decision that no causal relationship was established.

### 1. Applicability of the Causation Presumption

▮ The Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (Supp. V 1981) (Act), provides benefits to coal miners or their survivors for pneumoconiosis contracted by the miner as a result of coal dust exposure in the mines. To assist claimants in establishing benefit entitlement, Congress enacted certain presumptions of disease and disease causation. Relevant to this appeal is the causal presumption of 30 U.S.C. § 921(c)(1):

> If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment.

See 20 C.F.R. § 718.203(b) (1980).

Southard possessed three years of uncontested "coal mine employment." The ALJ held that he was not entitled to the above-quoted presumption because he was not a "miner" during the years he worked for the Detroit coal retailers. He therefore lacked the requisite ten years of coal mine employment needed to trigger the presumption.

Southard asserts that his work for the Detroit coal companies constituted employment as a miner for purposes of the Act. The following statutory provisions are pertinent:

> (d) The term "miner" means any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such

individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d).

(2) For purposes of subchapters II, III, and IV of this chapter, "coal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities;

(i) "work of preparing the coal" means the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of the coal mine.

30 U.S.C. § 802(h)(2) and (i) (Supp. V 1981).

Southard argues that his work with the Detroit retailers falls within the definition of "work of preparing the coal" because some portion of his work consisted of storing, loading, and unloading coal. He further asserts that the Detroit facilities are "coal mines" within the meaning of the Act because the work of preparing coal was performed. Therefore, he alleges, he is also included in the definition of a "miner" because his activity in moving coal to consumer homes was "transportation in or around a coal mine."

The statutory definition of a miner contains two elements; work in a coal mine, or "situs," and performing coal extraction or coal preparation work, a "function" requirement. *Amigo Smokeless Coal Co. v. Director,* 642 F.2d 68 (4th Cir.1981). In this case, we believe that Southard fails to establish the "function" prong of the definition.

We acknowledge petitioner's contention that a "coal mine" is basically defined by the work that is performed. Under the Act, the definition of a coal mine is inextricably related to function: "[C]oal mine means an area of land and all structures ..., and other property real or personal ... used in, or to be used in, or resulting from the work of extracting ... and the work of preparing the coal." 30 U.S.C. § 802(h)(2).

Nevertheless, we reject Southard's argument that he was involved in the "work of preparing the coal" while employed by the Detroit retailers. Southard's work in Detroit was not the preparation of coal because the coal was already prepared and in commerce upon its arrival at the retailers' facilities. As the Fourth Circuit noted in *Roberts v. Weinberger,* 527 F.2d 600, 602 (4th Cir.1975), coal is extracted and prepared when it is "in condition for delivery to distributors and consumers," and a mine extends "at least to the point where the coal is processed and loaded for further shipment." Preparation of coal occurs precedent to its retail distribution and consumption. Although impractical perhaps, it is nevertheless conceivable that coal *could* be extracted in one state, and prepared in another. Such was not the case here. The Detroit companies were themselves purchasers of prepared coal. In *Johnson v. Weinberger,* 389 F.Supp. 1296 (S.D.W. Va.1974), the benefits claimant worked for approximately 30 years at a chemical plant, shoveling coal onto a crusher for conveyance to the mill, and unloading carloads of "bug dust" coal that arrived in railroad cars. The district court stated:

While there is no question that plaintiff worked in an atmosphere which was filled with coal dust, the work he performed was not the preparation of coal as contemplated by the applicable law and regulations. "Preparation of coal" relates to the preparation of coal brought out of the mine prior to its shipment and use in related commercial facilities. In the instant case, plaintiff did not prepare coal after extraction from the mine in order to ship it to a commercial user. He was, in fact, the employee of a commercial user.

*Id.* at 1298.

In this case, it is clear the coal was extracted and prepared before it reached

the retailers in Detroit, Michigan. Southard's work unloading and stockpiling the coal was therefore not coal preparation. The Detroit retail facilities fail to meet the "function" prong of the coal mine definition. We, therefore, do not confront whether Southard's transportation activities occurred "in and around a coal mine." 30 U.S.C. § 902(d).

## 2. Causation

■ There is no question that Southard is totally disabled by pneumoconiosis within the meaning of the Act. In the absence of the above-referenced presumption, however, Southard must also establish a causal relationship between his three years of coal mine employment and the disease. 30 U.S.C. § 901(a).

The regulations pertinent to establishing causation state:

§ 718.201 Definition of pneumoconiosis.

For purposes of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. * * * For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment *significantly related to, or substantially aggravated by,* dust exposure in coal mine employment.

§ 718.203 Establishing relationship of pneumoconiosis to coal mine employment.

(a) In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose *at least in part* out of coal mine employment. The provisions of this section set forth the criteria to be applied in making such a determination.

(b) If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment.

(c) If a miner who is suffering or suffered from pneumoconiosis was employed less than ten years in the nation's coal mines, it shall be determined that such pneumoconiosis arose out of that employment only if competent evidence establishes such a relationship.

20 C.F.R. Part 718 (Subpart C), §§ 718.201, 718.203 (1980) (emphasis added).

We do not find the ALJ's causation determination to be adequate. We also believe that further development of the record is necessary to secure a more exacting determination. *See Carroll v. Califano,* 619 F.2d 1157 (6th Cir.1980).

Specifically, we find the causation determination inadequate in the following respects: 1) the ALJ failed to discuss or reconcile the apparently lesser burden of 20 C.F.R. § 718.203(a) with either the evidence or 20 C.F.R. § 718.201; 2) although the ALJ did make reference to § 718.201, we are unconvinced that even that requirement was properly applied; and 3) to the extent the ALJ determination, that three years of coal mine exposure did not "at least in part" contribute to Southard's disease, reflects a policy determination regarding the etiologic † pathway of disease causation, neither the Act, the regulations, nor the record evidence reasoning or support to withstand scrutiny on review. We remand because we believe this is a significant issue, further review of which, if necessary, could best be accomplished upon clarification of the decision and elaboration of the evidentiary record.

In large part, Congress enacted the Black Lung Benefits Act in response to problems encountered by miners when they sought compensation under state workers' compensation programs for their occupational disease. 30 U.S.C. § 901(a); Pub.L. No. 91–173, 1969 U.S.Code Cong. & Adm. News 2503, 2516; Pub.L. No. 92–303, 1972

---

† The etiology of a disease refers to the conditions which form its cause. Thompson, Black's Medical Dictionary 331 (32d Ed.1979).

U.S.Code Cong. & Adm.News 2305, 2336. *See* 1969 U.S.Code Cong. & Adm.News 2573–77 (minority objections). One of the major obstacles to qualifying occupational disease under state workers' compensation programs is an inflexible, often impenetrable, proof of causation requirement. Under state workers' compensation systems,

> When an industrial accident occurs, proof that the resulting injury arose out of employment is likely to be easy since the effect follows so clearly and immediately from the cause. Comparable proof may be extraordinarily difficult for the occupational disease victim. The onset of disease can occur long after a job began, and even after it has ended. Theories of the cause of a disease are often incomplete or uncertain. A number of factors unrelated to the workplace can also confound attempts to link a job and an illness. . . .

> Because proof that a disease arises out of employment presents more difficulties than similar proof for an accident, the claims process for victims of occupational disease is much more complicated. Workers' compensation was traditionally depicted as a nonadversarial process, but this portrayal, if valid at all, applies only to industrial accident claims. Occupational disease claims are six times more likely to be contested.

Note, *Compensating Victims of Occupational Disease*, 93 Harv.L.Rev. 922–23 (1980) (footnotes omitted).

▇▇▇ Indeed, the Act's rebuttable presumptions confirm Congress' recognition and concern with proof of causation as an obstacle to compensation. *See* 30 U.S.C. § 921(c). Although Congress did not relieve the disabled miner who is not entitled to presumptive causation of the burden of establishing a causal relationship, the meaning of this requirement is tempered by the Act's legislative history and its remedial nature. In short, the Act suggests that a miner must establish a *contributory* relationship, as opposed to the causal etiology of any discreet exposure period. That is, a miner need not establish his period of "coal mine employment," of itself, caused the disease, but only that it contributed to the disease. The Act is remedial in nature, and it must be liberally construed to include the largest number of miners as benefit recipients. *Miniard v. Califano*, 618 F.2d 405 (6th Cir.1980); *Morris v. Mathews*, 557 F.2d 563 (6th Cir.1978). "In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivor." Pub.L. No. 92–303, 1972 U.S.Code Cong. & Adm.News 2315.

The dissent remarks that § 718.201 is merely definitional, and there is no conflict between defining disease in § 718.201, and discerning the cause of disease in § 718.-203. Although we note our mutual agreement that § 718.203 states the proper causation inquiry, we do not perceive such convenient harmony on the facts presented here. We believe § 718.201 was applied here as a causal, not merely definitional, standard. The ALJ concedes that Southard has medically recognizable pneumoconiosis. The existence of a disease categorizable as pneumoconiosis, i.e., one among the constellation of respiratory or pulmonary impairments caused by exposure to coal dust, required the inquiry to proceed to causation—whether the impairment arose at least in part out of employment in the nation's coal mines. 30 U.S.C. § 901(a). Yet, though definition of Southard's impairment was not contested, the ALJ dismissed Southard's claim for failure to establish "his pneumoconiosis arose out of coal mine employment," referencing only § 718.201. Thus, section 718.201 has been applied here not to define or categorize a respiratory or pulmonary impairment, but to deny benefits on the ultimate question of causation. Finally, although we remand in part expressly for the Director's interpretation, it seems to us that the dissent's interpretation effectively negates the § 718.203 causation inquiry; a disease would always arise "at least in part" out of coal mine employment, § 718.203, if it is "significantly related to or substantially aggravated by," § 718.201, exposures in coal mine employment.

In the instant case, Southard had three years of coal mine exposure, although he was also exposed to coal dust when he worked for the Detroit coal retailers. On the causation issue, the record contains the medical report of Dr. Charles Wong. This report consists of Department of Labor Report of Physical Examination (Black Lung Claim), Form CM–988. Part III(B) of the report inquires, "In your opinion is the diagnosed condition related to dust exposure in the patient's coal mine employment?" Dr. Wong checked the box marked "yes," but also penned the word "possible." There is no record evidence that Southard's coal mine exposures did not contribute to his disease.

■ With reference only to 20 C.F.R. § 718.201, and disregarding the fact that Dr. Wong also marked "yes" in response to the causation inquiry, the ALJ held that Dr. Wong's statement "possible," "is not ... sufficient to justify an affirmative finding of such a relationship especially since the report contains no reference ... to his extensive period of such exposure as a non-miner." In light of the foregoing, we remark that neither the Act nor § 718.201 requires a claimant to establish what portion of his disease is due to non-mine exposure, and what portion is due to mine exposure. It is enough that the mine exposure is an exposure that contributed to the disease at least in part. *See* 20 C.F.R. § 718.203(a).

The petition for review is GRANTED. This case is REMANDED for further proceedings consistent with this opinion.

## KRUPANSKY, Circuit Judge, dissenting.

I agree that Southard is not entitled to the statutory presumption of causation (30 U.S.C. § 921(c)), however, I also believe the decision of the Administrative Law Judge (ALJ) on the causation issue is supported by substantial evidence and should be upheld. Accordingly, I dissent.

The ALJ, quoting 20 C.F.R. § 718.201, concluded that Southard had failed to produce evidence that his disease was "significantly related to, or substantially aggrava-

ted by, dust exposure in coal mine employment." The majority rejects this conclusion because of the ALJ's supposed failure to "discuss or reconcile the apparently lesser burden [of causation] of 20 C.F.R. § 718.203(a)." *Ante* at 70.

The majority's reliance on a perceived inconsistency in the regulation is misplaced. The pertinent regulations provide as follows:

For purposes of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. * * * For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment *significantly related to, or substantially aggravated by*, dust exposure in coal mine employment.

§ 718.203 Establishing a relationship of pneumoconiosis to coal mine employment.

(a) In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose *at least in part* out of coal mine employment. The provisions of this section set forth the criteria to be applied in making such a determination.

(b) If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment.

(c) If a miner who is suffering or suffered from pneumoconiosis was employed less than ten years in the nation's coal mines, it shall be determined that such pneumoconiosis arose out of that employment only if competent evidence establishes such a relationship.

20 C.F.R. §§ 718.201, 718.203 (emphasis added).

The majority apparently concludes that a claimant bears a lighter burden under

§ 718.203 to prove that his pneumoconiosis "arose at least in part out of coal mine employment" than under § 718.201 to demonstrate that his disease was "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." The majority has misconstrued the relationship of the two sections.

Section 718.201 defines a disease "arising out of coal mine employment." The section provides that a disease arises out of coal mine employment if, but only if, it is a disease "significantly related to, or substantially aggravated by, dust exposure in coal mine employment."

Section 718.203 articulates the burden of proof essential to entitle a miner to benefits under the Act. The section provides that a miner must prove that his disease "*arose* at least in part *out of coal mine employment.*" By attaching undue emphasis to the clause "at least in part" and ignoring the claimant's threshold burden of establishing that his disease "arose out of coal mine employment," the majority erroneously infers or concludes that the claimant's burden of proof to establish a disease under the Act is less than the burden imposed by the Act to establish that the chronic pulmonary disease or impairment is "... significantly related to, or substantially aggravated by, dust exposure in coal mine employment."

Hence, the two sections construed in context simply state that a claimant must prove that his pulmonary disease or impairment was, at least in part, significantly related to or substantially aggravated by, coal mine employment. Needless to say, if the pulmonary disease or impairment is not in any manner whatsoever significantly related to or substantially aggravated by, coal mine employment, then the disease can not be partially so related. Accordingly, once the ALJ determined that Southard's disease was not, in any manner, related to his coal mine employment, the pertinent inquiry was concluded.

Because the ALJ properly applied the regulations, the only remaining issue is whether his decision is supported by sub-stantial evidence viewing the record in its entirety. *Moore v. Califano,* 633 F.2d 727, 724 (6th Cir.1980). Furthermore, this court cannot overturn the ALJ's determination even if it would have arrived at a different conclusion if writing on a clean slate. *Id.*

The record discloses that Southard worked in a coal mine for approximately three years in the 1930's. For sixteen years following his employment in the coal mine he engaged in unrelated employment as a coal deliverer in Detroit, Michigan. In this employment Southard was exposed to high concentrations of coal dust. As Southard himself explained:

> Well I would say that inside of the coal bin, that one day inside of that coal bin you would get more dust than you would in a week in the coal mines.

Clearly the bulk of Southard's coal dust exposure occurred in non-coal mine employment.

This is not to say Southard was precluded from demonstrating that his pneumoconiosis was significantly related, at least in part, to the three years he worked as a miner in the coal mines. However, it was Southard's burden to establish this relationship by "competent evidence" (20 C.F.R. § 718.203(c)) which he failed to do. The only evidence Southard produced relative to causation is the form report of Dr. Wong. In response to the form question, "is the diagnosed condition related to dust exposure in the patient's coal mine employment," Dr. Wong checked the "yes" box but wrote in the word "possible".

The ALJ quite properly viewed this report as an extremely equivocal evaluation which, in fact, it was. Contrary to the unsupportable inferences drawn by the majority, the ALJ did not imply that Southard was required to establish what portion of his disease related to coal mine employment. Rather, the ALJ simply concluded that, based on the record taken in its entirety, and in particular the facts relating to Southard's non-coal mine employment, Southard had failed to carry his burden of proof on the issue of causation. That conclusion is supported by substantial evi-

dence. Accordingly, I would deny the petition for review.