**Kitty B. ROBERTS and James E. Roberts, Wage Earner, Appellants,**

v.

**Casper WEINBERGER, Secty. of HEW, Appellee.**

**No. 75–1503.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 8, 1975.

Decided Oct. 16, 1975.

Carl W. Newman, Appalachia, Va. (Shannon & Newman, Appalachia, Va., on brief), for appellants.

E. Montgomery Tucker, Asst. U. S. Atty. (Leigh B. Hanes, Jr., U. S. Atty., Stephanie W. Naidoff, Regional Atty. and Roland L. Vaughan, Jr., Asst. Regional Atty., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

Kitty B. Roberts, whose husband died of "black lung" in 1971, appeals from an order of the district court sustaining the Secretary of H.E.W.'s denial of widow's benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 801 *et seq.* (1975). The only dispute between the parties concerns whether Mr. Roberts was a miner within the meaning of the Act and the pertinent regulations. While the Secretary concluded that he was not a miner and his conclusion was sustained by the district court, we disagree. Thus, we reverse the judgment for the Secretary and remand the case for award of the claimed benefits.

## I.

As found by the district court, the claimant meets all of the personal eligibility requirements for a widow seeking benefits under the Act; and it is uncontradicted that her husband was totally disabled from pneumoconiosis[1] at the time of his death. It is undisputed that Mr. Roberts operated a truck hauling coal from the immediate site of its extraction in a strip mine to a tipple where it was processed, graded and loaded into railroad cars for further shipment. This journey took place over dirt roads of the mining company. While the evidence in the record is in conflict as to whether Mr. Roberts was employed by the mine owner or by a trucking company engaged by the mine owner, it is certain that he had engaged in this work for approximately fourteen years and he was exposed to substantial coal dust during the loading and unloading of the truck.

## II.

As amended, 30 U.S.C. § 902(d) defines "miner" as "any individual who is or was employed in a coal mine."[2] In regulations adopted pursuant to 30 U.S.C. § 921(a), the Secretary has defined "coal mine" as follows:

an area of land and all structures, facilities, machinery, tools, equipment,

---

1. Section 402 of the Act, as amended, defines pneumoconiosis as "a chronic dust disease of the lung arising out of employment in a coal mine." It is significant in light of our view of the merits of the case that, *before* amendment, the disease was defined as one "arising out of employment in an *underground* mine (emphasis added)."

2. Prior to amendment, § 902(d) defined a miner as one "employed in an *underground* coal mine" (emphasis added).

shafts, slopes, tunnels, excavations, and other property, real or personal, placed *upon, under, or above* the surface of such land by any person, used in or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities (emphasis added). 20 C.F.R. § 410.110(h) (1974).[3]

Given only the statute and this broad definition of "coal mine," it would be clear that Mr. Roberts was covered by the Act. He performed the same function, in a strip mine, as do the operators of mechanical conveyances which bring the coal to the shaft and ultimately to the surface in an underground mine. The Secretary concedes that in an underground mine such workers would be covered, and he does not dispute that even though he worked aboveground, Mr. Roberts was continuously exposed to the hazard of coal dust.

The Secretary argues, however, that Mr. Roberts was excluded from the definition of "miner" by virtue of 20 C.F.R. § 410.110(j), which reads:

"Miner" or "coal miner" means any individual who is working or has worked as an employee in a coal mine, performing functions in extracting the coal or preparing the coal so extracted.

The Secretary contends that this section encompasses those workers engaged in extraction and preparation, but not persons engaged in on-site transportation.

We disagree with the Secretary's interpretation and application of his regulation. In agreement with the administrative law judge, we think that Roberts' functions were part of the process of "extracting the coal and preparing the coal so extracted." The coal was not extracted and prepared until it was taken from the mine to the place where it was processed and graded so as to be in condition for delivery to distributors and consumers. We add also that, if given the effect advocated by the Secretary, 20 C.F.R. § 410.110(j) would add a further qualification to the clear language of 30 U.S.C. § 902(d). Since the statute is unambiguous in extending coverage to "any individual who is or was employed in a coal mine," and its legislative history makes plain that a coal mine may be aboveground as well as underground, 20 C.F.R. § 410.110(j) would be in direct conflict with the governing statute and, hence, invalid.

Despite the conflict as to whether Mr. Roberts was employed directly by the coal mine operator or by a trucking subcontractor, we think it is indisputable that he was employed *in* a coal mine. The Secretary's own regulation, 20 C.F.R. § 410.110(h), indicates that the boundaries of the mine extend at least to the point where the coal is processed and loaded for further shipment.

The judgment of the district court must be reversed and the case remanded for entry of an order directing that Mrs. Roberts be awarded benefits under the Act.

*Reversed and remanded.*

---

**3.** Given the amendments to § 902 referred to in n. 1 and n. 2, the Secretary's all-encompassing definition—"upon, under, or above"—is manifestly in accord with congressional intent.