Cecelia ADELSBERGER,
Plaintiff-Appellant,

v.

David MATHEWS, Secretary of Health, Education and Welfare, United States of America, Defendant-Appellee.

No. 76-1487.

United States Court of Appeals
Seventh Circuit.

Submitted Sept. 22, 1976.
Decided Oct. 28, 1976.

Gerald D. Owens, Benton, Ill., J. Lewis Wingate, Vienna, Ill., for plaintiff-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., David E. Worsley, Asst. U. S. Atty., Danville, Ill., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, TONE, Circuit Judge, and KUNZIG, Judge.*

PER CURIAM.

This is an appeal from Judge Wise's order affirming the decision of the Secretary of Health, Education and Welfare to deny black lung benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91–173, 83 Stat. 792, as amended, 30 U.S.C. §§ 901, et seq. (Supp. V, 1975). Appellant, Cecelia Adelsberger, applied for benefits on May 2, 1972. Her application was denied and, upon administrative reconsideration, was again denied.

After a request from the claimant, Administrative Law Judge L. Charles Leonard conducted a hearing. Considering the case *de novo*, he determined that the claimant had been a coal mine employee for over ten years, and that her ventilatory function test results were within the severity levels established for claims filed before July 1, 1973.[1] Thus, he found her to be disabled within the meaning of the Act. However, he ruled that she was not entitled to black lung benefits because she had been a clerical employee, not a "coal miner." The Appeals Council approved this ruling, and the administrative law judge's decision became the final decision of the Secretary.

The sole issue presented on this appeal is whether the Secretary's decision that the claimant was not a coal miner, as that term is defined in the Act and the regulations issued pursuant thereto, is supported by substantial evidence. We find that it is not, and therefore reverse and remand.

Congress enacted Title IV of the Federal Coal Mine Health and Safety Act of 1969 in order "to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis . . . ." 30 U.S.C. § 901. Three years later the Act was amended,[2] so that the law "will more adequately meet the objectives originally sought in Title IV . . . [and] . . . will bring to the disabled coal miner and his family a greater measure of justice than they have known heretofore." Sen.Rep. No. 92–743, 92d Cong., 2d Sess., 1972 *U.S. Code Cong. & Admin. News*, p. 2305.[3] Section 402 of the 1969 Act, 30 U.S.C. § 902(d), defined "miner" to include "any individual who is or was employed in an underground coal mine." In 1972 this definition was expanded, by deleting the limiting term "underground." The Act also empowers the Secretary of HEW to issue regulations

---

* The Honorable Robert L. Kunzig, Judge, United States Court of Claims, is sitting by designation.

1. 20 C.F.R. § 410.490.

2. Black Lung Benefits Act of 1972, Pub.L. No. 92–303, 86 Stat. 150.

3. The purpose of the black lung legislation was "to compensate the miners, and the widows and children of miners, whose lives and health have been sacrificed in the production of that critical energy source—coal." 1972 *U.S. Code Cong. & Admin.News*, p. 2305.

for determining eligibility under the Act, directs him to pay benefits in accordance with the statute and regulations, and establishes certain "rebuttable presumptions" regarding the eligibility determinations. 30 U.S.C. § 921 (Supp. V, 1975).

Pursuant to his statutory authority, the Secretary has issued regulations defining the relevant terms. A miner is "any individual who is working or has worked as an employee in a coal mine, performing functions in extracting the coal or preparing the coal so extracted," 20 C.F.R. § 410.110(j), while a coal mine is

"an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities."

20 C.F.R. § 410.110(h).[4]

The administrative determination that appellant is not a "coal miner" was based on these regulations. The statute, however, elaborates upon the definition of "coal mine" by explaining precisely what is meant by the phrase "work of preparing the coal." That phrase includes

"the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of the coal mine."

30 U.S.C. § 802(i). This definition applies throughout chapter 22 of Title 30, and thus controls the meaning of "coal mine" in the definition of "miner" provided in 30 U.S.C. § 902(d). Therefore, if the claimant's work during the years she was an employee of a coal mining firm included any of these tasks, she is a "coal miner" under the statute, although she might not be considered a miner as that term is commonly used.

The Secretary argues that "at no time did Appellant's duties come within" the definition of miner.[5] The record does not support that conclusion, however. Rather, the evidence submitted at the hearing before the administrative law judge establishes that the claimant's duties do fit within the statute. She acted as the intermediary between the office and the other miners, going into an area defined as part of the mine, underneath the tipple, to direct the switching of grates and of railroad cars. This determined what "kind of coal" was prepared and to whom the "lump" or "stoker" coal was shipped. She was also responsible for "all the coal weighing," whether the coal was to be shipped out of the mine by rail or truck. While performing these tasks she "got just as much dust" as did the men working in the tipple.

We conclude that her duties fell within the statute's broad definition of "work of preparing the coal." Thus, she worked in a "coal mine" as that term is defined. There is no dispute that she was "an employee" when performing these tasks. Therefore she must be considered to

---

4. These definitions appear to be based on the statutory definition of a coal mine, adopted in 1969. 30 U.S.C. § 802(h).

5. The cases cited by the Secretary in support of this assertion are distinguishable. In *Weaver v. Weinberger*, 392 F.Supp. 721 (S.D.W.Va. 1975), the claimant, a coal hauler who owned his own truck, was an independent contractor, not an employee. In *Young v. Weinberger*, 389 F.Supp. 979 (S.D.W.Va.1975), the claimant worked amidst a great deal of coal dust, but in a metal manufacturing plant, not a coal mine. Judge Knapp, who also decided *Weaver* and *Young*, both *supra*, held in *Johnson v. Weinberger*, 389 F.Supp. 1296, 1298 (S.D.W.Va.1974), that the phrase "preparation of coal" only relates to the coal "brought out of the mine prior to its shipment and use in related commercial facilities." Thus he found that Johnson was not a miner, because he was preparing the coal for the use of his employer, at its chemical plant, not in the mine. The claimant in this case, by contrast, was a coal mine employee, and worked in the mine itself, prior to the shipment of the coal.

have been a "coal miner" while she was so engaged.[6]

The Act and interpretative regulations require the successful claimant to demonstrate that he or she is a coal miner, and is totally disabled. The claimant must also establish that the disability stems from pneumoconiosis, and that the disease arose out of employment in the nation's coal mines. 20 C.F.R. § 410.410. Congress has enacted a series of presumptions regarding the existence of pneumoconiosis, and its causative link with coal mining employment.[7] Because the claimant here applied before July 1, 1973, her eligibility for benefits must be tested by the interim evidentiary rules and disability evaluation criteria promulgated by the Secretary.

■ As noted above, the administrative law judge found that the claimant's results on the ventilatory function test met the medical requirements established for disability due to pneumoconiosis, and so found her disabled. However, because he con-

sidered that she was not a "miner," he held that she was not entitled to the benefit of the rebuttable presumption regarding the cause of the disease. 30 U.S.C. § 921(c)(1). Although we hold that her work with respect to the loading of coal brought her within Congress' definition of "miner," the presumption that the disease "arose out of such employment" is available only "if a miner . . . was employed for ten years or more in one or more coal mines."[8] Because the record is ambiguous with respect to the time period during which the claimant performed the work of a miner, we must remand the case to the Secretary for further findings of fact.

**REVERSED and REMANDED.**

---

**6.** We draw additional support for our conclusion from the decision in *Roberts v. Weinberger*, 527 F.2d 600 (4th Cir. 1975), *reversing*, 391 F.Supp. 200 (W.D.Va.1975). In that case it was established that the late husband of the claimant "operated a truck hauling coal from the immediate site of its extraction in a strip mine to a tipple where it was processed, graded and loaded into railroad cars for further shipment." 527 F.2d at 601. The Court of Appeals concluded that "persons engaged in on-site transportation," such as Roberts, could fall within the statutory definition of "miner." 527 F.2d at 602. This was because "[t]he coal was not extracted and prepared until it was taken from the mine to the place where it was processed and graded so as to be in condition for delivery to distributors and consumers." *Id.* As the court further noted, "the boundaries of the mine extend at least to the point where the coal is processed and loaded for further shipment." *Id.* Although the claimant in the case at bar performed her tasks later in the sequence of processing and preparation steps than did Roberts, she falls within the court's language. In the words of the District Court in *Roberts*, she worked "as an intermediary between . . . parts of the coal mining oper-

ation." 391 F.Supp. at 201. Finally, we note that *Lawson v. Weinberger*, 401 F.Supp. 403, 404 (W.D.Va.1975), implicitly supports our conclusion that those involved with loading the coal are engaged in mining, as defined in the statute.

**7.** See the amended version of 30 U.S.C. § 921(c) (Supp. V, 1975). The constitutionality of these presumptions was upheld last term, in the face of a due process challenge. *Usery v. Turner Elkhorn Mining Co.*, —— U.S. ——, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

**8.** 30 U.S.C. § 921(c)(1) (Supp. V, 1975). It appears from 20 C.F.R. § 410.490(b) that even the administrative law judge's finding of disability depends upon the availability of the interim presumption. 20 C.F.R. § 410.490(b)(3) makes the height-variable table of ventilatory function test results of subsection (b)(1)(ii) available to establish disability due to pneumoconiosis only to those with "at least 10 years of the requisite coal mine employment." Of course, the claimant may nevertheless be able to establish the requisite disability as is otherwise provided in the regulations.