James **SKIPPER**

v.

David **MATHEWS**, Secretary of Health, Education and Welfare.

No. 75–1016 Civil.

United States District Court,
M. D. Pennsylvania.

Sept. 7, 1977.
As Amended Sept. 14, 1977.

Blythe H. Evans, Jr., Wilkes-Barre, Pa., for plaintiff.

S. John Cottone, U. S. Atty., Scranton, Pa., for respondent.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

James Skipper (plaintiff) filed this action to review the decision of the Appeals Council acting for the Secretary of the United States Department of Health, Education and Welfare (Secretary) denying his application for "Black Lung" benefits. The case was assigned to a magistrate and he has recommended that the Court grant the Secretary's motion for summary judgment which is now before the Court.

## FACTS

At the evidentiary hearing before the Administrative Law Judge, plaintiff testified that he worked from 1934 to 1937 as a mine laborer for the Flynn and McGinnley Coal Companies and from 1938 to 1960 as a blacksmith helper in the Exeter Shops of the Glen Alden Coal Company. He formerly testified that while employed at the Exeter Shops he repaired coal mine equipment which was covered with coal dust upon coming to the shops from the mines and that on occasions he went to the colleries to repair mine cages or equipment located in the mine. The record contains a statement from Julius John Parini that plaintiff worked for him at the Flynn Coal Company for approximately three years between 1934 and 1937 but doesn't contain any corroboration or verification of plaintiff's employment with the McGinnley Coal Company. George Plethean, who was the foreman of the Exeter Shops from 1956 to 1960, submitted a statement that plaintiff worked in the Exeter Shops from 1936 to 1960 and that he repaired coal mining equipment covered with coal dust. Plethean also stated, however, that he did not recall plaintiff ever leaving the shop to work in the colliery. It appears that the Appeals Council accepted this part of Plethean's testimony and rejected the contrary claims of the plaintiff.

## DISCUSSION

Generally speaking, in order to be entitled to "Black Lung" benefits, a living applicant must prove

(1) that he is totally disabled;

(2) that his disability is caused by pneumoconiosis or a chronic respiratory condition which may be presumed to be pneumoconiosis; and

(3) that his respiratory condition arose from employment in a coal mine or mines.

An applicant is entitled to a favorable presumption with respect to all three if his ventilatory function study results in values less than those fixed by the Secretary and if he has more than ten years of coal mine employment. Specifically, an applicant of plaintiff's height (73 inches) must have an FEV equal to or less than 2.7 liters and an MVV equal to or less than 108 liters. *See* 20 C.F.R. § 410.490(b)(3). The Appeals Council found plaintiff's FEV to be 1.45 liters and MVV to be 44 liters per minute, both clearly within acceptable limits, but ruled that the presumption was not available to him because he had not established the requisite ten years of coal mine employ-

ment. The essence of this holding was that plaintiff's employment in the Exeter Shops did not constitute coal mine employment. The Appeals Council did not list its reasons for this conclusion but noted that the "shop was away from the mine."

Since the Appeals Council determined that the presumption was not available to plaintiff, it was obliged to consider this action under the general rules of eligibility, which require that the applicant submit evidence which establishes that the three elements of a claim are present. The Appeals Council noted that, on the basis of his ventilatory function study, plaintiff had established both the existence of pneumoconiosis and the fact that he was totally disabled. In denying his claim for benefits, however, the Appeals Council held that the third element was not present since the evidence established that plaintiff's condition arose from his employment in the Exeter Shops and not from coal mine employment. On this issue, the Appeals Council made specific reference to the fact that plaintiff himself testified that his breathing problems arose after he left actual coal mine work and had begun working at the Exeter Shops.

A coal mine is defined in 20 C.F.R. § 410.110(h) as "an area of land and all structures . . . placed upon . . . the surface of such land . . . used in, to be used in, or resulting from the work of extracting in such area . . . anthracite from its natural deposits in the earth by any means or method . . .." At issue in this case is whether the Exeter Shops fit within this definition and the crucial question with respect to this issue is whether the shops were used in "the work of" extracting coal.

■ The work performed in the Exeter Shops did not, in itself, involve the extraction of coal. It was, however, part of the overall process because coal can not be extracted without properly functioning mining equipment. *Cf. Roberts v. Weinberger,* 527 F.2d 600, 602 (4th Cir. 1975). In the opinion of the Court, this is sufficient to satisfy section 410.110(h) which requires only that the structure be involved in "the work of" extracting coal. This language and the remedial purpose of the Act indicate to the Court that § 410.110(h) should be construed broadly.

The Court draws additional support for this conclusion from the decision in *Adelsberger v. Mathews,* 543 F.2d 82 (7th Cir. 1976) and *Roberts v. Weinberger, supra.* In *Aldesberger,* it was established that the appellant who was a clerical employee of a coal mine "acted as the intermediary between the office and the other miners, going into an area defined as part of the mine, underneath the tipple, to direct the switching of grates and of railroad cars." She was also responsible for "all the coal weighing whether the coal was to be shipped out of the mine by rail or truck" and "got just as much dust" as those working in the tipple. *Aldesberger v. Mathews,* 543 F.2d at 84. The Court of Appeals concluded that these duties fell within "the work of preparing coal." In *Roberts,* it was established that the late husband of the claimant "operated a truck hauling coal from the immediate site of its extraction in a strip mine to a tipple where it was processed, graded and loaded into railroad cars for further shipment." *Roberts v. Weinberger,* 527 F.2d at 601. The Court of Appeals then awarded benefits on the grounds that "coal was not extracted and prepared until it was taken from the mine to the place where it was processed and graded." *Id.* at 602. The Court recognizes the different facts and legal issues involved in these cases but notes, nonetheless, that their liberal view of the extracting or preparing coal requirement implicitly supports the similar approach adopted here.

■ In addition, the Court is not concerned by the fact that the Exeter Shops were not in the immediate area of a coal mine or that other than coal mine equipment was repaired there. As to the former, the definition of a coal mine in § 410.110(h) is taken verbatim from 30 U.S.C. § 802. The legislative history of § 802 indicates that it was intended to be a broad definition covering "all coal mines whether un-

derground or not" and "areas of adjoining mines physically connected underground." *See* 2 U.S.Code Cong. & Admin.News, p. 2503 (1969). It is true that in order to be considered a coal mine, an above-ground structure must be used in the extraction of coal "in such area" but, in light of the above, the Court does not feel that section 410.110(h) should be read to require that an above-ground structure necessarily be in the immediate area of the mine.

■ As to the latter, the testimony that plaintiff worked on other than mining equipment related to the period after 1960, at which point plaintiff had already completed over twenty years of employment at the Exeter Shops. Moreover, even assuming that plaintiff worked on nonmining equipment during his earlier years at the Exeter Shops, the fact would not be significant in the absence of some showing that his respiratory ailment may have resulted from this activity. During many periods the anthracite industry did not operate on a regular basis,[1] and it would be antithetical to the purposes of the Act to exclude those who may have done other work during the period of their mining employment.

## CONCLUSION

■ It is the opinion of the Court that the Exeter Shops operated by the Glen Alden Coal Company fit within the definition of a coal mine as set forth in § 410.110(h). It follows then that plaintiff has established ten years coal mine employment and is entitled to a presumption that his respiratory problems arose from coal mine employment. *See* 20 C.F.R. § 410.490(h). Therefore, since the record in this case is devoid of any evidence to rebut this presumption, the Court concludes that plaintiff is entitled to "Black Lung" benefits. An order will be entered denying the Secretary's motion for summary judgment and awarding summary judgment in favor of the plaintiff.

---

1. *See Hertz v. Secretary of HEW,* 428 F.Supp. 56, 57 (E.D.Pa.1977).