NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0316n.06
Filed: June 2, 2008

No. 07-3826

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| NORTON CONSTRUCTION CO., d/b/a NORTON ENVIRONMENTAL, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS and COLONEL DANA HURST, | ) | |
| | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

_____

BEFORE: COLE and GRIFFIN, Circuit Judges; and FORESTER, Senior District Judge.[*]

GRIFFIN, Circuit Judge.

This appeal involves plaintiff Norton Construction Company's application for a permit to construct a new landfill in an area subject to defendant United States Army Corps of Engineers' jurisdiction. The Corps refused to process the application, citing a Congressional appropriation act that the Corps construed as forbidding it from processing applications for new landfills in this area that it considered to be within the Muskingum Watershed. Norton unsuccessfully challenged this decision in district court. The district court ruled that the Corps reasonably interpreted the statute

_____

[*]The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

and that the law did not violate Norton's constitutional rights. Plaintiff Norton now appeals, and we affirm.

I.

Norton is an Ohio company that seeks to construct a landfill in Tuscarawas County, Ohio. Construction of the landfill would involve filling wetlands and streams that the parties agree fall within the jurisdiction of the Army Corps of Engineers. As such, Norton is required to apply to the Corps for a permit pursuant to § 404 of the Clean Water Act, 33 U.S.C. § 1344.

Norton applied for a § 404 permit, but the Corps returned the application without acting upon it because Congress enacted a temporary appropriations rider, which in the opinion of the Corps, prohibited the Corps from processing its application. Norton sued the Corps in the United States District Court for the Northern District of Ohio on November 5, 2003. The district court ruled initially in favor of Norton, and the Corps appealed. After the temporary appropriations rider expired, we dismissed the appeal as moot and remanded the case to the district court.

In the meantime, Congress passed, and the President signed, the Energy and Water Development Appropriations Act of 2006, Pub. L. No. 109-103, 119 Stat. 2247 (2005). Section 103 of the Act, enacted as a regular appropriations statute rather than as a temporary appropriations rider, prohibited the Corps from granting new landfill applications in the "Muskingum Watershed":

> SEC. 103. In order to protect and preserve the integrity of the water supply against further degradation, none of the funds made available under this Act and any other Act hereafter may be used by the Army Corps of Engineers to support activities related to any proposed new landfill in the Muskingum Watershed if such landfill –

(1) has not received a permit to construct from the State agency with responsibility for solid waste management in the watershed;

(2) has not received waste for disposal during 2005; and

(3) is not contiguous or adjacent to a portion of a landfill that has received waste for disposal in 2005 and each landfill is owned by the same person or entity.

Pub. L. No. 109-103, § 103, 119 Stat. 2247 (2005).

Norton again requested that the Corps process its petition for a § 404 permit. The Corps ultimately determined that plaintiff's application was barred by § 103 because Norton's proposed landfill site was located on a stream that is connected to the tributary system of the Tuscarawas River, which is itself a tributary of the Muskingum River.

Norton amended its complaint and requested injunctive relief from the district court. The district court ruled in favor of the Corps, and Norton timely appealed.

II.

The crux of this dispute centers upon the undefined term "Muskingum Watershed." Norton argues that this term is "patently ambiguous" and the Corps improperly construed it to cover the geographic area where it seeks permission to construct a landfill.

The question of ambiguity is a threshold issue: if the statute is not ambiguous, then there is no need to defer to the agency's interpretation; we must simply apply the statute. The Supreme Court has held that when "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). However, if

the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.

Logically, there are three possible judicial avenues: (1) if the statute is unambiguous, then we merely apply the statute to resolve this case; (2) if the statute is ambiguous and the agency's interpretation is reasonable, then we must adopt the agency's interpretation; or (3) if the statute is ambiguous and either we conclude that it is inappropriate to defer to the agency, or that the agency's interpretation is unreasonable, then we must make our own interpretation. Norton insists upon the third option, arguing that the statute is ambiguous – thus precluding the first option – and asserting that we should not defer to the Corps.

Norton bases its arguments on an assumption of ambiguity. It assumes that the court agrees that the statute is ambiguous and argues that the Corps' interpretation is not entitled to deference. The district court ruled that the Congressional intent embodied in § 103 was not ambiguous, and thus there was no need to defer to the Corps' interpretation:[1]

> [T]he Court finds that Congressional intent is clear—Section 103 was intended to apply to the Muskingum Watershed, as defined by the Muskingum River and all waters that eventually flow into the Muskingum River. This includes the full 18-county area contemplated by the Corps, including the unnamed tributary of the South Fork of Sugar Creek found on Norton's proposed location for the Ridge Landfill.

The district court conceded that "[o]n its face, the term Muskingum Watershed reasonably accommodate[s] either party's definition." Further, it noted that "the legislative history is more revealing," but the only history it identified was a statement made by a single member of Congress.

---

[1]The district court ruled in the alternative that even if the statute was ambiguous, the Corps' interpretation is reasonable.

The district court quoted a statement made by Congressman Ralph Regula, whose district encompassed much of the area in question. Congressman Regula stated that:

> The Muskingum Watershed encompasses 18 counties in Ohio and includes all of the area which drains into the Muskingum River and its tributaries where it joins with the Ohio River. Below the watershed lies an aquifer of great importance to the constituents of my district and those of surrounding areas.
>
> The threat that landfills pose to the aquifer and the watershed are too great to ignore. Remember, we are fortunate in the United States to be well- endowed with water, and we are indebted to our forebearers for creating the infrastructure to deliver potable water to our communities, farmers and industries.

151 CONG. REC. H10360-01. The district court considered this statement to be authoritative evidence of Congressional intent, and the Corps agrees. We do not. The House passed Pub. L. No. 109-103 on May 24, 2005, and agreed to the conference report on November 9, 2005. Congressman Regula's statement was made on November 16, 2005 – three days before it was signed by the President, and months after it passed the House. Under these circumstances, there is no evidence that Congressman Regula's statement is anything more than the opinion of a single member of the House of Representatives. Therefore, it is of limited utility and reliability in construing the statute. *See, generally, Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005).

Assuming, without deciding, that the statute is ambiguous, we next consider the issue of deference to the agency's interpretation.

### III.

Norton argues that the court should not defer to the agency's interpretation of § 103 because (1) *Chevron* does not compel the court to defer to the Corps under these circumstances, (2) the

Corps' interpretation does not reflect Congressional intent, and (3) the court should refuse to adopt the Corps' interpretation because it invokes the outer limit of Congressional power.

Norton makes two arguments suggesting that *Chevron* deference does not apply in this case. First, Norton notes that § 103 is part of an appropriations act and argues that "Congress did not repeal the Clean Water Act, nor did Congress otherwise redefine the Corps' jurisdiction by amending its governing statute . . . ." Norton's brief raises this argument but does not develop it. Section 103 passed both houses of Congress and was signed by the President. Thus, it is a binding act of Congress, and Norton has not asserted a plausible argument regarding why we should ignore its substance.

Norton's second argument is that *Chevron* deference does not apply to an agency's interpretation of its own jurisdiction. Some courts have questioned whether an agency's determination of its own jurisdiction is entitled to *Chevron* deference, *see, e.g., Otis Elevator Co. v. Sec'y of Labor*, 921 F.2d 1285, 1288 (D.C. Cir. 1990) (noting the controversy but refusing to decide the question), and others have ruled that judicial review is de novo in such a circumstance. *See, e.g., Bolton v. Merit Sys. Protection Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998); *United Energy Servs., Inc. v. FMSHA*, 35 F.3d 971, 974 (4th Cir. 1994). *But see, Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 380-81 (1988) (Scalia, J. concurring) (listing Supreme Court cases suggesting that the usual rules of deference apply even when an agency is interpreting a statute limiting its authority).

Our circuit has not expressly decided this issue. In *Bush & Burchett, Inc. v. Reich*, 117 F.3d 932, 935-36 (6th Cir. 1997), we noted the controversy surrounding deference to an agency regarding its own jurisdiction, but refused to decide the question because we determined that even if we reviewed the agency's determination de novo, we came to the same conclusion as the agency. *Id.* at 936. A similar rationale applies to the case at bar.

In the present case, the agency offers a reasonable explanation for its decision that Norton's application was subject to § 103. The Corps argues that a "watershed" refers to the area that drains into a particular waterway. Given this definition, the Corps asserts that the "Muskingum Watershed" refers to "the entire geographic area whose waters ultimately drain to the Muskingum River." The Corps also relies upon the history of the "Muskingum Watershed Conservancy District" ("MWCD"). The Flood Control Act of 1939, Pub. L. No. 76-396, 53 Stat. 1414 (1939), formalized the relationship between the MWCD and the Corps. *See Id.* at § 4. The Corps notes the similarity between the phrase "Muskingum Watershed," used in § 103, and the "Muskingum Watershed Conservation District," and suggests that "the linguistic similarity is compelling."

Norton disagrees with this historical analysis and argues that Congress could have avoided this controversy by specifically stating that § 103 applies to the MWCD. As discussed in Section V, *infra*, Congress has now, in effect, done so by expressly adopting the Corps' definition of the Muskingum River Watershed.

Norton offers a final argument for not deferring to the Corps. Norton asserts that the Corps' interpretation is not entitled to judicial deference because it invokes the outer limit of Congressional

power. The Supreme Court has cautioned agencies against pushing the limits of their authority. *See Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172-73 (2001). In *SWANCC*, the Supreme Court rejected the Corps' attempt to interpret its jurisdiction under the Clean Water Act to extend beyond "navigable waters" and into habitat used by migratory birds. *Id*. at 164-65. Similarly, in *Rapanos v. United States*, 547 U.S. 715, 737-38 (2006) (plurality opinion), the Court invalidated the Corps' interpretation of the Clean Water Act that "stretches the outer limit of Congress's commerce power and raises difficult questions about the ultimate scope of that power." However, neither of these cases is applicable to the case at bar.

*SWANCC* and *Rapanos* both involved agency interpretations that expanded the scope of federal jurisdiction at the expense of state sovereignty, and thus involved federalism concerns, as well as concerns about the proper scope of the Commerce Clause. In the present case, the Corps is not attempting to expand its own authority; there are no federalism concerns here. Indeed, the Corps' action here results in a limitation of its authority. Norton acknowledges that the Corps has jurisdiction over its proposed construction, otherwise it would not need to seek a § 404 permit, but the Corps has determined that § 103 stripped it of its ability to exercise that jurisdiction.

We hold that the Corps' interpretation of the term "Muskingum Watershed" is reasonable. If we were to apply *Chevron* deference to the Corps' interpretation of § 103, we would affirm the Corps' reasonable interpretation. However, even if we were to reject *Chevron* deference, and thus apply de novo review to ascertain the meaning of the "Muskingum Watershed," we would conclude that the Corps' interpretation is still the most logical conclusion. Thus, we find ourselves in the

same position as the *Burchett* court – the outcome in this case will be the same whether we apply *Chevron* deference or a de novo review. As a result, we defer to another day a ruling on *Chevron*'s applicability to an agency's determination of its own jurisdiction.

IV.

Finally, Norton argues that it has been denied its equal protection rights, as well as its rights to substantive and procedural due process, all guaranteed by the Fifth Amendment. We disagree.

The Fourteenth Amendment prohibits states from denying equal protection of the laws, and courts have found that this prohibition applies to the federal government through the Fifth Amendment. *See, e.g., Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954); *United States v. Baker*, 197 F.3d 211 (6th Cir. 1999). Equal protection analysis requires that when "legislation does not burden a fundamental right or target a suspect classification, it will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate state interest." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 531 (6th Cir. 1998) (citing *Vacco v. Quill*, 521 U.S. 793, 799 (1997)). Norton does not claim to be a member of a protected class, and this dispute does not involve a fundamental right, thus the court must apply rational basis review.

Section 103's stated purpose is to "protect and preserve the integrity of the water supply against further degradation . . . ." Pub. L. No. 109-103, § 103, 119 Stat. 2247 (2005). The parties do not doubt the legitimacy of this action; thus, § 103 will survive judicial scrutiny so long as it is rationally related to this purpose. It is not difficult for a statute to survive rational basis review. The court is not limited to the defense proffered by the Corps; in order to defeat a statute subject to

rational basis review, Norton must negate "every conceivable basis" that could support the statute. *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).

The district court had no difficulty finding a rational relationship between limiting the construction of new landfills and preserving the integrity of the water supply, describing such a relationship as "self-evident." We agree. Because the statute bears a rational relationship to a legitimate state interest, Norton's equal protection argument must fail.

Norton also argues that it has been denied its substantive and procedural due process rights. In order to establish a due process violation, a plaintiff "must first establish the existence of a constitutionally-protected property or liberty interest." *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). However, even if Norton could establish that it had a protected property interest – which is doubtful – Norton concedes that the due process analysis is dependent upon the same rational basis review that applies in the equal protection context. Thus, Norton's due process claims fail for the same reason that its equal protection argument failed.

V.

This case was made more difficult by its ever-changing legal landscape. At first, by means of a temporary appropriations rider, Congress prohibited the processing of new landfill applications in the area of the Muskingum Watershed. Later, Congress reenacted this prohibition as part of a nonexpiring appropriations statute, thus prompting the current suit. Finally, while the present appeal was pending, Congress acted yet again by passing the Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 1844 (2007). The relevant portion of the latest federal statute provides:

(a) IN GENERAL. – The funding prohibition set forth in section 103 of the Energy and Water Development Appropriations Act, 2006 shall not apply to the construction or expansion of any landfill in the Muskingum River watershed if –

(1) the landfill is used solely for the disposal of –

(A) wastes generated from the combustion or gasification of coal,

(B) wastes consisting of byproducts from pollution control technology installed to comply with the Clean Air Act, or

(C) both of such types of wastes.

(2) the landfill is owned by the waste generator or any affiliated person, and

(3) the facility at which the wastes are generated is located in the same watershed as the landfill.

(b) DEFINITIONS. – For purposes of this section:

(1) The term "affiliated person" means any person who, directly or indirectly, owns or controls the waste generator, is owned or controlled by the waste generator, or is under common ownership or control with the waste generator.

(2) The term "Muskingum River watershed" shall mean the area within the watershed of the Muskingum River, *as delineated by the Secretary of the Army, acting through the Chief of Engineers*.

*Id*. at § 132 (emphasis added).

At oral argument, Norton conceded that it does not fit into the new exceptions created in § 132(a). However, the statute is relevant for a different reason: § 132(b)(2) contains an explicit statutory delegation to the Corps' definition of the Muskingum River watershed.

The issue of the retroactivity of the new statute to the present appeal is problematic, but immaterial. *See generally, Diffenderfer v. Central Baptist Church of Miami, Fla., Inc.*, 404 U.S.

- 11 -

412, 414 (1972). In this regard, were we to apply the new statute, we would invoke § 132(b)(2), defer to the agency's determination, and thus affirm the judgment of the district court. However, if we do not, we affirm for the reasons described herein. At this juncture, we conclude that declaring the case moot and again remanding for reconsideration in light of the latest statute would be a futile exercise and a needless waste of valuable judicial resources.

## VI.

For the reasons described above, we affirm the judgment of the district court.